SAMUEL W. LUQUES, *Adm'r, versus* BENJAMIN THOMPSON.

Where the condition of a bond was, that the obligor should annually deliver certain articles to such wife, as the obligee might afterwards marry, should she survive him; and after his marriage and decease there was a failure to deliver the articles; *it was holden,* that an action could be maintained upon the bond by an administrator of the obligee, to recover the damages incurred by such failure.

And where the condition of the bond, in reference to any person who might be married to the obligee and become his widow, was, that "she shall enjoy one fifth part of the produce (of the farm conveyed to the defendant,) delivered to her free from all expense on her part, also the privilege of keeping one cow and one pair of sheep and furnishing her with the back room and bedroom adjoining, with the use of the kitchen, together with a sufficient quantity of firewood cut in suitable lengths for her fire, sufficient for her use during her natural life," *it was holden,* that she was not entitled to hay or firewood to be by her carried away from the farm and disposed of at her pleasure.

THIS action was commenced by Hannah Thompson, as administratrix of Benjamin Thompson, deceased. During its pendency the administratrix died, and Samuel W. Luques was appointed administrator, *de bonis non.*

The action was submitted upon the following statement of facts : —

"*Hannah Thompson, Adm'x,* v. *Benjamin Thompson.* — The parties agree to submit the action to the decision of the Court on the following statement of facts : —

"The action is debt on a bond dated Nov. 4, 1820, made by defendant to Benjamin Thompson, senior, deceased. The said Hannah Thompson was duly appointed administratrix on the estate of Benjamin Thompson, senior, late of Kennebunkport, deceased, intestate, in the year 1839. The defendant made and executed a bond, by the name of Benjamin Thompson, jr. to said Benjamin Thompson, senior, on Nov. 14, 1820,

a copy of which is hereunto annexed and makes a part of the case.

"Said Hannah Thompson was married to said Benjamin Thompson, senior, in the year 1822. So far as this present question is affected, and for the opinion of the Court, it is admitted that the defendant has fulfilled and performed all things on his part to be performed, unless as to the provisions made in said bond for the benefit of the wife which the said Benjamin Thompson, senior, might marry. It is agreed, that the defendant has not offered said Hannah one fifth of the hay, grown on said premises, and that said Hannah has demanded said one fifth part of hay grown on said premises, to be delivered to her thereon ; that said defendant refused to deliver any quantity of hay to be carried away from said place and denies the right of the said Hannah to have and receive the same, but has always been ready to grant to said Hannah "the privilege of keeping one cow and one pair of sheep," on said premises.

"That said defendant has had at the house ready for the use of said Hannah, "a sufficient quantity of firewood cut in suitable lengths for her fire, sufficient for her use," to be burned and used on the premises ; that said Hannah has demanded of the defendant "a sufficient quantity of firewood cut in suitable lengths for her fire, sufficient for her use," delivered at said premises and to be by her carried away and used elsewhere ; that said defendant refused to deliver to said Hannah firewood as aforesaid to be by her carried away and used elsewhere than on the premises, and denies her right so to remove it, but has ever been ready to deliver wood as aforesaid to be burned on the premises.

"And for the purposes of this hearing, it is admitted, that in other respects the condition of said bond has been performed.

"And for the purposes of this question, it is admitted, that the defendant has pleaded the general issue, and by brief statement has alleged a performance of the condition of said bond on his part; and has also further alleged in his said brief statement, that if there had not been a perfect performance, that the plaintiff cannot maintain this action as administratrix

of said deceased on account of any omission to furnish, or any refusal to permit the said Hannah to enjoy any of the provisions in the said bond, in favor of any wife the said Benjamin Thompson, senior, might marry after the execution and delivery of said bond.

" If the Court shall be of opinion, that the action cannot be maintained, the plaintiff to become nonsuit ; and if the action can be maintained, the defendant to be defaulted and damages are to be assessed by the Court.

" *Samuel Bradley*, plaintiff's Attorney.

" *John Shepley*, Att'y to defendant."

By the terms of the condition of the bond, the defendant was to pay certain sums to his brothers and sisters ; was to allow certain privileges in the house to the obligee, his father, who was also to have the right to " improve the one half of said premises mentioned in the deed of said Benjamin Thompson, senior, to said Benjamin Thompson, jr." Benj. Thompson, senior, was then unmarried, and the following was in the condition of the bond, immediately following the provision made for himself : —

" And in case the said Benjamin, my father, should in the course of Divine Providence marry a wife, and she, my mother-in-law, should survive the said Benjamin, my father, at his decease, she shall enjoy one fifth part of the produce, delivered to her free from all expense on her part, also the privilege of keeping one cow and one pair of sheep and furnishing her with the back room and bedroom adjoining, with the use of the kitchen, together with a sufficient quantity of firewood *cut in* suitable lengths for her fire, sufficient for her use during her natural life."

The case was argued in writing.

*Chisholm*, for the plaintiff.

1. A cause of action existing, the action is properly brought in the name of the Administratrix ; as it could not be maintained in any other name. *Saunders* v. *Filley*, 12 Pick. 554 ; *Richardson* v. *Learned*, 10 Pick. 264. And the provision in

said bond for the benefit of any wife the said Thompson, senior, might thereafter marry, was a valid contract to pay to a third person who was to be subsequently appointed by the obligee; the appointment to be made by act of marriage.

2. The provision for the widow's benefit of "one third part of the produce of the premises, is independent of the "keeping of one cow and one pair of sheep." The two are connected by the word "*also.*" There is nothing to signify that the latter was intended as a substitute for any portion of the former. Nor could they be so substituted, to accomplish any conceivable object of the parties, as the one is no measure for the other. The delivery of the produce, is without condition or restriction. It is therefore to be hers, absolutely. "Produce" includes hay. "Produce" has the largest signification of any word which could be used in this connection; and cannot be so limited as not to include hay, without putting in its place, by way of construction, some other word of less meaning, which the parties themselves might as easily have used, if intended. The legal import of the word "produce," wherever found in the books, accords with its popular use, as a word of the largest meaning. *Flagg* v. *Flagg*, 11 Pick. 475; Chitty on Contracts, 368; *Staples* v. *Emery*, 7 Greenl. 203; *Dockham* v. *Parker*, 9 Greenl. 137. Jacobs' Law Dict. Title "Emblements," where the word "products" is used in contradistinction to emblements.

The object in view, to provide a competency for a widow, demands this construction, taking the premises to be a common farm. One half of it, it seems, was deemed little enough to reserve so long as he lived. One fifth of the whole produce would seem barely adequate for her; and but little better than her bare dower in the same premises.

If hay was not included in the word "produce," the provision might fail, by the defendant's laying the whole down to grass, or a large portion of it, and cultivating adjoining land for other purposes. This consideration, so prominent as to strike any one who looks at the case, must be presumed to have influenced the parties to use the word "produce"; and in the sense contended for.

3. As to the "firewood for her fire."

Why should it be burned and used on the premises, and not elsewhere? the plaintiff's claim is not founded on a right of dower or any other tenancy for life in land; but on a bond that the defendant will cut and deliver it to her, "free of expense;" and there is no condition or restriction in the terms of the delivery.

The provision for her having two rooms in the house is a mere privilege; and there being nothing in the other stipulations, for wood and produce, to render them dependent on the other, for rooms; she might waive the latter without affecting the others. A forced construction will not be resorted to, to affix to a contract, a proviso, which may place in the way of its enjoyment the burden of imprisonment.

This is simply a contract for the delivery of specific articles; the plain established rules of which are violated by the defendant. Nor will any appearance of its being a maintenance for life alter the case. For in that case there must be a plain, express stipulation for place, or the maintainee is entitled to her maintenance, in any reasonable place. *Wilder* v. *Whittemore,* 15 Mass. R. 262; *Thayer* v. *Richards,* 19 Pick. 398.

But this is not a maintenance. The provisions are specific, and might exceed, or fall short of a maintenance.

*J. Shepley,* for the defendant.

From the statement of facts it appears, that the only breach alleged is a failure to deliver, to be carried away, certain hay and firewood, under the provision in the bond, in reference to a second wife, should the obligee marry again.

This provision is a part of the same sentence wherein it is said that Benjamin, the father, should improve half the premises mentioned in the deed, showing where the rooms were located.

1. The first inquiry is, (if there be a cause of action, which is denied) can the action be maintained in the name of the administratrix of Benjamin Thompson, senior, deceased, to whom the bond declared upon was given in 1820, on account

of the alleged breach. We say, that an *administrator* can maintain no action for any breach of this stipulation.

The power and duty of an administrator is pointed out in the Rev. St. c. 106, § 3, which is a mere re-enactment of the prior statute. It requires the administrator to make out an inventory of " all the goods, chattels, rights and credits of the deceased," and administer the same according to law. Could there be an inventory taken of this hay and firewood ? And could it be administered upon as the property of the deceased ? Or could the administrator inventory this bond, collect of the defendant claims under it, if such there can be, accruing to others, coming into existence after his death, and put the amount into his administration account to be distributed according to law ? This is not the case of an existing demand or of existing property, where the intestate was the trustee of others, or the assignor of a chose in action. The subject matter of this action could never be the property of the intestate, either for himself or in trust for another. It is believed, that it is certain, that if the intestate had lived until the time of the commencement of this suit, that he could not have maintained any action for any of the alleged breaches of the condition of this bond, assigned by the plaintiff. If this be so, how can the administrator, his representative only, maintain the suit ? I can find no authority, which, in my view, will authorize the maintenance of this action ; nor can I discover any principle upon which it can be sustained. And it is beyond my power to perceive, that the cases cited for the plaintiff on this point, have any tendency towards enabling the plaintiff to succeed.

2. There was no cause of action. The provision for a wife, the obligee might at some after time marry, was a mere personal privilege for her, and depending upon her living upon the premises, and wholly ceasing to exist, whenever she removed therefrom.

The principle, that to ascertain the meaning of an instrument the whole of it must be taken into consideration, is too familiar to require authorities for its support. In the exam-

ination of the whole bond, it would seem to be conclusive that, with the exception of the money payment and the few specific articles given outright to David and Livina, the benefits provided for were to be " enjoyed" upon the premises, and no where else. It was so with the obligee himself. "I hereby agree, that the said Benjamin shall improve one half of said premises," also " furnishing the said Benjamin with the back room and bedroom adjoining," &c., " the privilege of the northwest bedchamber to my brother David," &c. and the provision for the unmarried daughter, and, as we say, clearly so as to the future wife. On looking at the contingent provision, as to some wife and widow the obligee might afterwards marry and leave, the whole in relation to her must be taken together, in order to ascertain the true meaning. The plaintiff cannot separate the different provisions and make independent clauses of them. The first, the produce, must be connected with the very last words, " during her natural life," or it would be but the provision for a single year, and so the plaintiff would then fail on that ground. Indeed the whole is in one connected sentence. So the keeping of the cow and sheep must necessarily be upon the farm. She was merely to have " the privilege of keeping them ;" the back room was to be furnished *to her* and the bedroom adjoining ; that particular one, and not any one, " *with the use of the kitchen, together with a sufficient quantity* of firewood cut in *suitable lengths* for *her* fire, *sufficient for her use.* It was for her fire and not the fire of another, and for that fireplace and not for any other, and for her use and not the use of another ; the wood was to be cut in suitable lengths for that fireplace, and the quantity was to be determined only by what would be " sufficient" for her in that room. The whole was intended as a privilege there, depending upon her living there, and not assignable ; the rooms, the produce, the keeping of the cow and sheep, the firewood ; all was a provision for her alone, and at that place. If she removes from the premises, as she did, she abandons the whole provision. Such was the intention of the parties, and so, it is believed, is the law. The case of *Wood* v. *Bar-*

*stow*, 10 Pick. 368, is directly in point. The provision there was by will and not by bond, but the same words must have the same meaning, whether used in a will or a bond ; and more especially, where the person to be benefited is not a party to the bond, any more than to the will. In *Wood* v. *Barstow*, the words were, — "I give to my daughters Mary, Rose and Elizabeth the *use and improvement* of my dwellinghouse, the *two gardens* before mentioned, *apples for their use*, green or dry. *wood sufficient for one fire, delivered at the door*, the *use of a good cow kept on the farm* summer and winter, after the death of my wife, during their remaining single, and a seat in my pew, which they are to occupy immediately after my decease." It was held by the Court, that the *whole provision* was a mere personal privilege, and wholly ceased on their ceasing to reside in the house. The words in our case are much stronger in favor of the construction for which we contend, than in *Wood* v. *Barstow* ; *White* v. *Cutler*, 17 Pick. 248. The use of the rooms was to be " together with a sufficient quantity of firewood," and not separate therefrom.

3. If either of the grounds of defence already taken are tenable, the plaintiff must fail. But it is unnecessary for us to contend as to any thing but the firewood and the hay. The firewood and hay, for two years only, are in controversy. Still the principle is the same, as if a greater amount was depending.

We say then, in the third place, that she was not entitled to the firewood, or to the hay, to be carried away from the premises, and sold or used elsewhere ; and indeed not entitled to the hay, if she had remained upon the premises. The case shows, that she has been offered the firewood to be used for her fire upon the premises, and that the defendant has been always ready to allow her " the privilege of keeping one cow and one pair of sheep" upon the premises.

*Firstly*, as to the firewood. On this point the Court is referred to the remarks already made on that subject under our second objection, without repeating them here.

It was the manifest intention of the parties to the bond, she not being one of them, that the firewood should be used only "*for her fire*" upon the premises. If it were otherwise, why was it said, that it "*should be cut in suitable lengths for her fire*," in that fireplace? How could the defendant know in what lengths to cut it for another fireplace, and at a distance? Why say "*sufficient for her use*"? The quantity was dependent on how much was necessary to warm that room. What would be sufficient in that room, might be wholly inadequate in a different one. The wood was to be for "*her use*", not for the use of any other person. If she could carry it away, she might sell it. It was to be sufficient for "*her fire*," not fires. And it should be taken into consideration, that the provision for her husband, for the other son, and for the unmarried daughter, were all to be upon the premises. It was to be wood for her fire in that place, and, like the keeping of the cow and sheep, was to be used there, if anywhere, and not carried away. *Wood* v. *Barstow*, 10 Pick. 368, before cited.

And secondly, as to the one fifth part of the hay.—By reading the condition of the bond, it will appear, that it was drawn by an unskilful person, wholly ignorant of technical terms, and dictionary learning. No rule of law is better settled, than that the intention of the parties, ascertained by an examination of the whole instrument, is to govern, in giving it a construction, as before stated. An inspection of the original bond will show, that it is in the handwriting of the defendant, who was then the mate of a vessel. The provision made by the obligee for himself, in addition to rooms in the house, was, that "he, the said Benjamin, shall improve the one half of said premises." This would not authorize him to sell the hay off the farm, as it would be waste. The provision for whatever person might become his wife, was better than that for himself. The first provision for her was, that "at his decease she shall *enjoy* one fifth part of the produce delivered to her free from all expense on her part;" and then follows immediately after, "also" (*enjoy*, again, probably, being in-

tended to be understood) " the privilege of keeping one cow and one pair of. sheep." This would include keeping on hay in the winter as well as pasturing them in the summer. She therefore could not want the hay to keep her stock, which were to be kept on the farm by the defendant, as well in winter as in summer. The plaintiff claims the right to have one fifth part of the hay delivered to her, *to be carried off from the farm, and sold*, to the impoverishment of it, *in addition to the keeping of the stock*. This right the defendant denies. In the law books, as well as in fact, the hay is no more the produce of annual cultivation, and would no more go to the executor in the event of the decease, than the pasturing. And to me it appears, as absurd, that she, under this provision, should claim the hay to be carried off, and not used on the premises for the keeping of the cow and sheep, as that she should in the same way claim the one fifth of the pasturing in addition to keeping the cow and sheep. There is a provision for firewood, and so there is for keeping the cow and sheep. The object was to provide for her a support upon the farm, and not in the town or the city, and to enable her to keep house there, in the style and mode to which she well knew farmers were accustomed. On the plaintiff's ground, this was a mode of raising money for her benefit. She could not want it for the keeping of her cows and sheep, for they were to be kept otherwise. If such had been the design, why should not a sum of money have been required to be paid, instead of compelling her to sell hay for that purpose, especially as the sale of hay from the farm would injure it ? And why should she have such fund provided, when he provided nothing of the kind for himself.

In reply.

There is no soundness in the argument, that the plaintiff is entitled to the fifth part of the hay, because that without it, the provision would be inadequate. One fifth part of what was raised upon the farm, " delivered to her free from all expense," with firewood ready for the fire, and the keeping of the cow and sheep, with a house to live in, is much better than dower,

and is so admitted to be, and indeed is better than the provision for himself, "the right to improve one half of the premises," without adding thereto the one fifth of the hay. It is assuming a fact, and drawing an erroneous inference from it.

The "consideration so prominent as to strike any one who looks at the case," "that if hay was not included in the word produce, the provision might fail by the defendant's laying the whole down to grass," does not appear to me to be so very overwhelming. He might much more easily lay the whole down to pasturing, and more easily still, abandon the whole, and have neither produce, hay, nor pasturing, or he might turn the whole into *produce* and pasturing and have no hay. But in either case, if she remained there to avail herself of them, he must keep the cow and sheep, and furnish the firewood. But is it to be presumed, that the defendant would do any such thing, when by so doing the injury to himself must be far greater, than to a lady seventy-five years of age, whose right, whatever it was, ceased with her life.

The counsel for the defendant here contended, that the word "*produce*" was indefinite in its meaning, and was used in the very cases cited for the plaintiff, in an entirely different sense in one place from what it was in another; and that it had acquired no technical meaning. He commented upon the cases cited, and insisted that they negatived the position they were cited to sustain.

It is said in the plaintiff's argument, that this is simply "a contract for the delivery of specific articles." This is not a question whether the articles were offered at the right place, but whether *an action* can be maintained against the defendant for his declining to deliver the firewood and hay to be carried away and sold, when she had left the premises. I do not perceive, that there is anything involving any question as to the place of delivery, whether in Kennebunkport, Lyman or Alfred. I will merely remark, that where the intention of the parties as to the place of delivery of specific articles can be ascertained from the contract, the authorities all agree, that a delivery there is sufficient. It has been held that a note payable in

"*farm produce*" is payable at the farm of the contractor. 2 Kent, (3d Ed.) 508, referring to 5 Cowen, 514.   See *Howard* v. *Miner*, 20 Maine R. 330, and *Sheldon* v. *Purple*, 15 Pick. 528.   The inquiry here is, is she entitled to have the firewood and hay to be carried off and sold.

Comments were here made upon the cases of *Wilder* v. *Whittemore*, 15 Mass. R. 262, and *Thayer* v. *Richards*, 19 Pick. 398 ; and it was contended, that they did not conflict with the case, *Wood* v. *Barstow*, or aid the plaintiff's case.

*Bradley* and *Chisholm*, in reply.

The defendant on his part has objected, first, that this action cannot be maintained by the administratrix, that power to maintain it is not given by chap. 106, § 3, Rev. Stat. which defines the powers of administrators.   In reply, the bond in suit was a legal right vested in the intestate.   The administrator's power to sue it, if not named in the statute, is incident to his ancient and comprehensive office, the mere name of which adopted in a statute, implies among other powers, that of suing for the breach of any contract made solely with his intestate. 2 Blackstone, 489, 510 ; Chitty on Contracts, 19.

The defendant asks, could the administratrix inventory this bond ?   If any obscurity rests on the answer, it equally affects all claims of the intestate, where the legal right is in him whilst the equitable interest is in another; such as assigned choses in action.   Because, in principle it matters not whether this equitable interest in a third person is created by assignment to him, or by making him a beneficiary at the origin of the contract.

It is said by defendant's counsel, "this was not the case of an existing demand."   But it was an existing valuable contract, though performable at a future time ; *the legal property* in which was in the plaintiff's intestate at his decease, and as such must have passed to his legal representatives.

Again he says, " the subject matter of this contract could never be the property of the intestate, either for himself or in trust for another."   That is to say : the hay and firewood being payable after his decease, could never be his property.

But is it the legal property in the specific thing to be paid, or is it, in the contract, while existing in contract, that gives to a party and his executors the right to sue?

*The cause of Action.*— The defendant's counsel argues that *hay* is not included in "1-5 part of the produce," to be delivered to the widow.

And further, that whatever was included in the provisions for her benefit, was a personal privilege, depending on her using and enjoying it on the farm. We deny both positions.

The comprehensiveness of meaning of the word *produce,* either in its popular use, or according to legal precision, is not narrowed by the authorities and comments offered in defendant's argument. Ignorance and unskilfullness in the draftsman, therefore, if existing, as is said, afford no reason for narrowing its construction.

Nor can any doubt arise, on this point, in consequence of the other provision, to wit: "also the privilege of keeping one cow and one pair of sheep." Strike out this provision, and would there then be any pretence that hay was not included in produce? And why should the addition of it *alter* a preceding stipulation? It is connected with what precedes by "also," a word of *addition,* not of *qualification.* But it is said they must eat hay. Very well: If any question arises thereupon, it is, *whose* hay shall they eat? Shall they feed from her 1-5 or from his 4-5ths? The mere *privilege* of *keeping them* on the place, does not necessarily imply whose hay they should eat when both were provided with hay. The only question then is, whether upon the strict rule of construction, that where a clause is doubtful, it shall be taken most strongly against the party who uses the language. The plain terms of the instrument, the rules of construction if they are ambiguous, the objects of the parties to it, and the circumstances of the case, are all opposed to such a construction.

The defendant inquires why the plaintiff did not demand manure, trees and pasturing? Satisfactory answers are promptly suggested. Manure, she had no use for; and it is not commonly considered, like hay, as produce. Trees, unlike

the other articles claimed, have no such specific annual produce, as could well render them the subject of such claim and delivery. Pasturing could not be delivered.

Selling hay off the farm *is not "waste."* It is a common practice with widows whose dower is assigned in hay land, and other tenants for life.

It is also asked, " why should not a sum of money have been required to be paid instead of compelling her to sell hay?" It is answered : any specific sum of money deemed adequate, might have been difficult for the defendant to raise on farm produce, *particularly twenty-eight years ago.* His ability to raise it would at all times depend on the crops.

If the widow was compelled to live in his house, and have her hay consumed in his barn, the many ways in which the defendant, if so disposed, might annoy and wrong her, for which there would be no adequate remedy, might poison the whole living. Unless the contract in the plainest terms subjects her to this liability, the law will not. As to the firewood, the language is not " for her use," but " sufficient for her use," " cut in suitable lengths for her fire," not " for her fire *place*". She would be at liberty to alter the existing fireplace, or use a stove. Or with equal propriety burn it elsewhere or dispose of it to another.

The stipulations for her benefit, as to articles, are all specific as to quantity. And the import of the language is, that they shall all be *delivered* to her, without condition of special purpose ; which denotes an absolute change of property.

The counsel for the plaintiff here commented upon the cases cited for the defendant, as well as on those cited in the opening.

The opinion of the Court was made known at the September Term, 1848, in the county of York, drawn up by

WHITMAN C. J. — The first question raised on the part of the defendant, is as to the right of the administrator to maintain an action on the bond, for the causes assigned as breaches of the condition annexed to it. The contract was between the

defendant and the intestate ; and the suit is between the representative of the latter, and the defendant. At common law we have only to look to the parties on record ; and then to the cause of action. If the parties to the record are such as may sue and be sued, on the contract set forth, we must then see if there be a cause of action. Whether some other person is ultimately to be benefited by a recovery at common law we have no occasion generally, to inquire. Whether the interest to be consulted be of a legal or equitable character has but little, if any thing, to do with the cause of action. If there has been a breach of the condition of the bond, whether it took place before or since the decease of the intestate, his legal representative must be the one, at common law, entitled to maintain an action to recover the damages accruing in consequence of it.

It is true, however, that Courts of law have been in the habit of lending their aid to protect the rights of those beneficially interested, in a merely equitable point of view ; but never to defeat such claims ; nor to allow such considerations to interfere with the cause of action. In the present instance it does not appear to be necessary for the Court to know for whose benefit this action was instituted ; or whether it was brought by the intestate's representative, of his own accord, and with a view to the benefit of the estate ; or by some one in the name of such representative, with a view to avail him or herself of an equitable right, arising under that bond. The defendant has no release, from the intestate or his representative, to set up. If he had, we might be called upon, in consequence of some equitable right, appearing in some third person, to determine whether it should operate or not. He gave his bond, and at the time of giving it acknowledged himself to be then indebted to the intestate. The indebtment was to be avoided by the performance of certain conditions. If those conditions have not been performed, as agreed, the indebtment remains ; and payment may be enforced by the representative of the obligee. The first objection, therefore, to the maintenance of the action, fails.

We come now to the consideration of the question whether the condition of the bond has been performed. The condition of it, in reference to the widow of the intestate, is in these words, "she shall enjoy one fifth part of the produce (of the farm conveyed to defendant,) delivered to her free from all expense on her part ; also the privilege of keeping one cow, and one pair of sheep and furnishing her with the back room and bedroom adjoining ; with the use of the kitchen together with a sufficient quantity of firewood, cut in suitable lengths for her fire, sufficient for her use during her natural life."

The questions raised under this part of the condition are, first, was the defendant bound to deliver to the widow one fifth part of the hay, raised on the farm annually, to be by her carried away, and be disposed of by her at her pleasure ; and, secondly, was she entitled to have the firewood to be furnished, and to carry it away, and dispose of it at her pleasure.

The defendant contends that she was not entitled to any part of the hay, except such as her cow and sheep might consume on the place, where they were to be kept ; and there is much reason to believe that such must have been the intention of the parties to the bond ; and if such was the intention, it is conclusive. This intention is to be sought for in the instrument declared upon, taken together, having reference, at the same time, to the nature of the contract, and the situation of the parties, and the object to be accomplished. It is not said in terms, that she shall " enjoy" one fifth of the hay, but that she shall " enjoy" one fifth of the produce. Was one fifth of the hay included in these terms ? Hay, it is true, is an annual product of the farm, and so is pasturage. And it is not perceived, why she might not claim the one fifth of the latter as well as of the former. They are, however, both regarded, by farmers, as products to be consumed in keeping the stock on the farm ; and from the products of the stock the remuneration for the hay and pasturage is expected to be derived. Good husbandry requires that such should ordinarily be the course of management upon a farm. Farms are sometimes let in the country at the halves, as farmers express it, that is, for one

half the produce. What is meant in such case ? Is the land-lord to take one half of the crop of hay and pasturing, and then come in to share with the tenant the half of the products of the stock, kept on the other half of the hay and pasturing ? It would seem irrational to suppose that such would be the undestanding of any farmer, who did not intend the ruin of his farm. Under such a letting it is believed that the tenant could not be allowed to do otherwise, than to use the hay, cut on the farm, in feeding stock upon it, and that the landlord would have no right to prevent his doing so. And the latter would, instead of one half of the hay and pasturing, be understood to be entitled to one half of the produce of the stock.

Besides, the widow was to *enjoy* one fifth of the produce. The expression, to enjoy one fifth of the hay, would be inap-propriate. To *enjoy* would seem to be applicable only to what would be adapted to her personal use and accommodation.

The keeping of her cow and sheep is specially provided for, and, according to her construction, she is to have one fifth of the hay set apart for her use, and then her cow and sheep are to be kept upon as much as may be necessary of the remain-ing four fifths. This cannot have been the intent of the par-ties to the bond.

As to the wood, we think it very clear, that the defendant was not under obligation to furnish it, except so far as she might need it in the place reserved for her residence and occu-pation. The whole provision, taken together, shows that such was the case. Rooms were provided for her accommodation. The cow and sheep were to be kept on the place or farm. The wood was to be cut suitable for her fireplace there. It could not have been contemplated that the defendant should adapt it to a fireplace elsewhere. The setting apart of the rooms for her accommodation of residence, the keeping of the cow and sheep on the farm, and the preparation of the wood for her fireplace by the defendant, all concur to show, that the parties to the bond could never have contemplated or have understood that she was to be furnished with the wood, except for her fire in the house of the defendant, and in the room reserved for her use.                    *Plaintiff nonsuit.*